UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

SAFELITE GROUP, INC.,

    Plaintiff,

v.

ZURICH AMERICAN INSURANCE
COMPANY, INC.,

    Defendant.

Case No. 2:12-cv-536
JUDGE EDMUND A. SARGUS, JR.
Magistrate Judge Mark R. Abel

## OPINION AND ORDER

This matter is before the Court on Plaintiff Safelite Group, Inc.'s ("Safelite") Motion for Temporary Restraining Order and Preliminary Injunction ("Motion for Injunctive Relief"). (Doc. No. 3.) For the reasons that follow, the Court **DENIES** Plaintiff's Motion for Injunctive Relief.

## I. BACKGROUND

On June 15, 2012, Safelite filed this action alleging three claims against Defendant Zurich American Insurance Company ("Zurich") and three claims against its broker, Defendant Aon Service Corporation ("Aon"). The American Arbitration Association ("AAA") is listed as a defendant but no claims are asserted against it. The claims filed against Zurich are for injunctive relief, declaratory judgment and breach of implied duties.

Also on June 15, 2012, Safelite filed its Motion for Injunctive Relief. On June 18, 2012, the Court held an initial scheduling conference pursuant to Local Rule 65.1. S. D. Ohio Civ. R. 65.1. The parties agreed to have the Motion for Injunctive Relief decided on brief. The motion is now ripe for review. (*See* Docs. No. 11, 12, 13.)

1

### A. Safelite and Zurich

Every year since 2002, Safelite has acquired a portfolio of business insurance from Zurich. In 2008 and 2009, Safelite acquired an insurance program from Zurich that provided workers compensation, general liability and commercial automobile insurance. Zurich and Safelite executed a Deductible and Paid Loss Retrospective Rating Agreement and related Specifications ("Program Agreement"), which governed the insurance program. (Doc. No. 11, Ex. A.)

Safelite contends that in connection with the commercial automobile insurance, it was and is Safelite's practice to, wherever possible, decline Uninsured/Underinsured Motorist ("UM/UIM") coverage. In some states, including Louisiana, an insured is required to complete certain forms to effectuate its decision to reject UM/UIM coverage. Safelite relied upon its broker-agent Aon to assist it with certain aspects of its insurance program, including facilitating the proper completion of UM/UIM rejection forms in various states, including Louisiana. Safelite alleges that it completed the rejection forms, provided them to Aon, who in turn provided them to Zurich. Zurich contacted Aon on several occasions to inform it that Safelite had failed to properly complete the Louisiana rejection form, and requested that Aon obtain a properly completed form and return it to Zurich. Safelite alleges that Aon failed to inform it of the defect in the rejection form. Safelite alleges that Zurich knew of Safelite's intent to decline the UM/UIM coverage yet never directly informed Safelite of the defect in its rejection form.

As set forth in the Collateral section of the Program Agreement, the expected cost of the insurance that Safelite acquired is approximately $22 million. (Doc. No. 11-2, Ex. A at 8 of Addendum I; PageId 145.) The Program Agreement establishes what is referred to as a

2

loss-sensitive arrangement, by which the cost of Safelite's insurance was determined and paid over time, primarily as a function of Safelite's covered losses. *Id.* at 1.

The Program Agreement "governs the structure and operation of and the duties and obligations of each party" with respect to the loss-sensitive arrangement. *Id.* Safelite's primary obligation under the Program Agreement is to provide funds to Zurich to ensure that claims and claims handling expenses can be satisfied. *Id.* at 1–2. Safelite's financial obligations to Zurich under the Program Agreement include the duty to fund an escrow account that is used to pay claims and claims handling expense that arise in connection with Safelite's insurance. *Id.* at 7.

The Program Agreement contains an arbitration provision, which in relevant part reads:

> Any dispute arising out of the Interpretation (*sic*), performance or alleged breach of this Agreement shall be settled by binding arbitration administered by the American Arbitration Association (AAA) under its Commercial Arbitration Rules
> . . . .

*Id.* at 9. One of the AAA's Commercial Arbitration Rules is Rule 7, which states that the "arbitrator shall have the power to rule on his or her own jurisdiction, including any objections with respect to the existence, scope or validity of the arbitration agreement." (Doc. No. 12-3, Ex. B, AAA Commercial Arbitration Rule 7 available at http://www.adr.org.)

## B. The Wethey Litigation

On October 7, 2009, Bret Wethey, a Safelite employee and Louisiana resident, while acting within the course and scope of his employment with Safelite was involved in a motor vehicle accident with Louisiana resident Loyce Harper. Mr. Wethey and several of his relatives filed suit in state court in Louisiana against Harper, Harper's private passenger automobile insurer, State Farm Mutual Automobile Insurance Company, and Wethey's employer's

3

commercial automobile insurer, Zurich. The Wetheys sought recovery from Zurich under Safelite's UM/UIM policy based on their allegation that they incurred damages as a result of the accident beyond the $25,000 in coverage available to them under the private passenger automobile policy issued to Harper by State Farm. The Wetheys asserted they are entitled to recover from Zurich up to Safelite's policy limits of $5 million because Safelite had not rejected UM/UIM coverage in the manner required by Louisiana's UM/UIM statute.

On January 23, 2012, Safelite sought leave to file a petition to intervene in the Wethey litigation for the purpose of asserting claims against Zurich. (Doc. No. 12-4, Ex. C, Safelite's Petition of Intervention.) Zurich opposed this intervention, but on April 30, 2012, the Louisiana trial court denied Zurich's opposition and granted leave for Safelite to intervene for the purpose of enforcing any statutory contribution rights it may have against Zurich. (Doc. No. 12-6, Ex. E, Judgment.) The trial court ultimately determined that Mr. Wethey could recover under the Louisiana UM/UIM statute. Safelite claims that the trial court's finding is erroneous because it is in conflict with Louisiana law.

On May 22, 2012, less than two weeks before trial was scheduled to begin, Zurich reached a settlement with the plaintiffs in the Wethey litigation. In the settlement, Zurich agreed to pay a total amount of $2,225,000 in addition to the $300,000 that Zurich had previously tendered to the Wetheys in accordance with Louisiana law. Safelite has refused to pay any portion of this claim payment or the expenses associated with this claim, and instead, has filed a Notice of Intention to Seek Supervisory Writs. (Doc. No. 12-13, Ex. L, Notice.) According to that Notice, Safelite intends to seek discretionary review before the Louisiana appellate court of an otherwise non-appealable interlocutory decision.

4

## C. Arbitration

On May 24, 2012, Zurich filed a Demand for Arbitration with the AAA against Safelite. The Demand seeks arbitration of any and all claims between Zurich and Safelite arising out of the interpretation, performance or breach of the Program Agreement, including but not limited to Safelite's failure to fund claim payments, plus related expenses and assessments, arising from the claims asserted in the Wethey litigation. (Doc. No. 12-10, Ex. I., Arbitration Demand.)

On June 11, 2012, Safelite and Zurich participated in an initial conference with the AAA concerning Zurich's Arbitration Demand. Safelite informed the AAA that it objects to proceeding with arbitration because it believes the AAA lacks jurisdiction over the claims asserted by Zurich. The AAA informed the parties that it would proceed with the arbitration unless enjoined by a court order.

On June 20, 2012, Zurich filed a motion in the Wethey litigation seeking to compel Safelite to arbitrate its disputes with Zurich.

## II. STANDARD

The decision whether or not to issue a preliminary injunction under Rule 65 of the Federal Rules of Civil Procedure falls within the sound discretion of the district court. *Friendship Materials, Inc. v. Michigan Brick, Inc.*, 679 F.2d 100, 102 (6th Cir. 1982). In determining whether to grant a preliminary injunction, this Court must consider four factors: "(1) the likelihood that the movant will succeed on the merits; (2) whether the movant will suffer irreparable harm if the injunction is not granted; (3) the probability that granting the injunction will cause substantial harm to others; and (4) whether the injunction advances the public interest." *Jones v. Caruso*, 569 F.3d 258, 270 (6th Cir. 2009); *see also Winter v. Natural Res.*

5

*Def. Council*, 555 U.S. 7 (2008).

"These four considerations are 'factors to be balanced, not prerequisites that must be met.'" *Certified Restoration Dry Cleaning Network, L.L.C. v. Tenke Corp.*, 511 F.3d 535, 542 (6th Cir. 2007) (quoting *Jones v. City of Monroe*, 341 F.3d 474, 476 (6th Cir. 2003)). A stronger showing of likelihood of success is required as the other factors militate against granting relief, but less likelihood of success is required when they support granting relief. *Performance Unlimited, Inc. v. Questar Publ'rs, Inc.*, 52 F.3d 1373, 1385-86 (6th Cir. 1995). "Moreover, a district court is not required to make specific findings concerning each of the four factors used in determining a motion for preliminary injunction if fewer factors are dispositive of the issue." *City of Monroe*, 341 F.3d at 476. Finally, "the district court's 'weighing and balancing of the equities of a particular case is overruled only in the rarest of cases.'" *McPherson v. Michigan High Sch. Ath. Ass'n*, 119 F.3d 453, 459 (6th Cir. 1997) (citation omitted).

## III. ANALYSIS

### A. Likelihood of Success on the Merits

In its motion, Safelite presents the following argument to support its claim that it is likely to succeed on the merits:

> The entire thrust of Zurich's claim is that the Wethey accident is subject to Louisiana's UM/UIM statute and, therefore, Zurich was obligated to make payments to the Wetheys pursuant to the Policy, which triggers reimbursement obligations by Safelite under the Paid Loss Agreement. Zurich's legal position is in conflict with controlling Louisiana law.
>
> By its plain terms, the Louisiana UM/UIM statute "shall apply to any liability insurance covering any accident which [i] occurs in this state and [ii] involves a resident of this state." La. P.S. 22:1295)1)(a)(iii). As the Supreme Court of Louisiana explained, "The word 'shall' in a statute represents mandatory language. Additionally, when the wording of a statute is clear and free of

6

ambiguity, the letter of the statute shall not be disregarded under the pretext of pursuing its spirit." *Champagne v. Ward*, 893 So.2d 773, 786 (La. 2005). Indeed, when defining the issue under consideration in *Champagne* - whether, in multistate cases, Louisiana's UM/UIM law must be applied to foreign insurance policies or whether courts should first engage in a choice of law analysis – the Louisiana Supreme Court expressly incorporated the clear statutory prerequisites: "when the accident occurs in Louisiana and involves a Louisiana resident." *Id.* at 780.

Here, the Wetheys are Louisiana residents; however, the accident occurred in Mississippi. As the appellate court recently held in *Triche v. Martin*, 13 So.3d 649, 652, 653 (La. Ct. App. 2009), the Louisiana UM/UIM statute simply does not apply in these circumstances. Because the Louisiana UM/UIM statute – both on its face and as interpreted in *Triche* and *Champagne* – does not apply to this out-of-state accident, any payments made by Zurich to the Wetheys are necessarily outside of the Policy (which the parties expressly intended would not apply in Louisiana) and thus are not subject to the Paid Loss Agreement [that contains the arbitration provision]. Accordingly, as a matter of law, Safelite has no responsibility for any payments that Zurich has made or intends to make to the Wetheys.

(Doc. No. 3 at 10–11.)

In its response, Zurich takes issue with the merits argument as framed by Safelite. Zurich contends that the merits of the underlying dispute, *i.e.*, whether the Louisiana UM/UIM statute applies to the Wethey accident, may be dealt with by a Louisiana appellate court someday, but it is not the merits issue before this Court. Instead, Zurich asserts that when a party seeks a preliminary injunction to stop a pending arbitration, the party's likelihood of success on the merits depends on the party's ability to demonstrate that it is not required to arbitrate the claim. (Doc. No. 12 at 13) (citing as an example *WMA Secs., Inc. v. Ruppert*, 80 F. Supp. 2d 786, 790 (S.D. Ohio 1999) ("Plaintiffs' success on its claims in this action depends upon its ability to demonstrate that it is not required to arbitrate the claims asserted by Defendants."). Therefore, Zurich concludes that the issue before the Court is whether there is an enforceable agreement between the parties to arbitrate. *Id.* at 13–14 (citing *The O.N. Equity Sales Co. v. FINRA Dispute*

7

*Resolution, Inc.*, No. 1:07-cv-804, 2008 U.S. Dist. Lexis 11288, *13-*14 (S.D. Ohio Feb. 1, 2008)).

Safelite contends in its reply that it is not asking this Court to make such a determination. Instead, Safelite indicates that it agrees with Zurich that the merits argument before the Court relates to whether the claim is arbitrable, stating:

> As Safelite explained in its Motion, there is a substantial likelihood *it will succeed on the merits of its contention that Zurich's claim is not arbitrable* because, under controlling Louisiana law, the Louisiana UM/UIM statute does not apply to the Wetheys' claim. Thus, Zurich's payments to the Wetheys do not implicate the Paid Loss Agreement [and its arbitration provision], and any claim related to the recovery of those payments is not subject to arbitration.

(Doc. No. 13 at 5) (emphasis added). So, it appears that both parties agree that the merits consideration before the Court is whether Safelite has shown that it is likely to succeed on the merits of its contention that Zurich's claim is not arbitrable. It would seem then that the Court must determine whether there is a binding arbitration agreement that covers the claim at issue. However, in its reply Safelite sets out three separate arguments indicating that this too is not the determination that the Court must make.

Specifically, Safelite argues: 1) "Safelite did not agree to arbitrate Zurich's present claim," 2) "Safelite is not asking this Court to determine arbitrability," and 3) "Safelite is not asking this Court to decide the underlying issue of whether the Louisiana UM/UIM statute applies to the Wetheys' claim." *Id.* at 6–8. Safelite disagrees with Zurich's contention that the parties have an agreement to arbitrate their disputes:

> Zurich admits that a plaintiff seeking to enjoin arbitration establishes a likelihood of success on the merits when it demonstrates it is not required to arbitrate the claim at issue. ([Memo. in Opp.] at 13.) Here, that is the very argument advanced by Safelite. The Arbitration should be stayed because Safelite did not agree to

8

> arbitrate Zurich's claim seeking to recover payments it made to the Wetheys, as those payments were not made pursuant to the Policy and thus do not implicate the Paid Loss Agreement [including its arbitration provision]. Accordingly, Safelite has shown a substantial likelihood of success on the merits.
>
> In its opposition, Zurich makes the untenable assertion that the applicability of the Louisiana UM/UIM statute "has noting to do with whether the dispute between Zurich and Safelite is arbitrable." As explained above and in Safelite's opening Motion, the applicability of the UM/UIM statute has <u>everything</u> to do with whether Zurich's claim is arbitrable.

*Id.* at 6 (emphasis in original).

If Safelite's arguments is accepted, this Court would then have to necessarily determine whether the arbitration agreement between the parties covers the claim at issue here, *i.e.*, Zurich's payments to the Wetheys. Safelite contends that the only way to determine whether the arbitration agreement between the parties covers the payments to the Wetheys is to know whether the Louisiana UM/UIM statute applies, which is something both parties agree is for the Louisiana courts–not this Court–to determine. Therefore, this Court is left only with the option of staying the arbitration, without making any determination as to whether the arbitration agreement between the parties covers the payments made to the Wetheys and/or whether the Louisiana statute applies. This option, however, is not a determination that Safelite has shown that it is not required to arbitrate the claim at issue, only that the arbitration should be stayed pending the outcome of this appeal in the Louisiana courts. At this juncture, however, the Louisiana trial court has already made its determination–it found that the statute applies. Whether a Louisiana appellate court permits Safelite's interlocutory appeal is yet to be determined; and if it does permit the appeal whether the appellate court reverses the trial court is also yet to be determined.

That being said, the Court disagrees with Safelite's assertion that the only way to

9

determine whether the arbitration agreement between the parties covers Zurich's payment to the Wetheys is to rely upon the Louisiana court, or courts, to decide whether the UM/UIM statute applies. As Zurich correctly points out, Safelite's Motion for Injunctive Relief is actually premised on a potential defense to Zurich's claim. Specifically, as a defense to Zurich's claim that Safelite breached the Program Agreement by failing to pay Zurich in accordance with the Agreement, Safelite contends that Zurich's payment of the claim was not required under Louisiana's UM/UIM statute. The existence of this potential defense, however, does not impact this Court's decision as to whether the dispute between Zurich and Safelite is arbitrable.

Instead, the way to determine whether Safelite has shown that it is not required to arbitrate the claim is to look at the agreement and determine whether Safelite agreed to arbitrate the claim. As to this inquiry, Safelite admits that under the Program Agreement it agreed to arbitrate "[a]ny dispute arising out of the interpretation, performance or alleged breach of" the Program Agreement. (Am. Compl. ¶ 24.) It is also undisputed that Zurich's Arbitration Demand alleges that Safelite breached the Program Agreement by failing to reimburse Zurich for payments made to the Wetheys in the wake of the accident. (Am. Compl. ¶ 38.) Thus, the Court finds that Safelite and Zurich agreed to arbitrate all claims arising out of an *alleged* breach of their agreement. They did not agree to arbitrate only claims that are proven in advance of the arbitration to be actual breaches of their agreement. There is no allegation that Safelite was not a party to the arbitration agreement, that it was fraudulently induced into signing the agreement or that some other ground invalidates the arbitration clause. Therefore, the Court concludes that the claim against Safelite is arbitrable even if Safelite in the future proves that it did not, in fact, breach the Program Agreement.

Consequently, all issues regarding the arbitration are now reserved to the arbitration forum. As this Court has stated previously:

> The federal policy favoring enforcement of valid agreements to arbitrate disputes is now well-established. *See Moses H. Cone Hospital v. Mercury Construction Corp.*, 460 U.S. 1, 24 (1983). Accordingly, once a court has determined that a valid agreement to arbitrate a dispute exists, all other issues concerning the dispute must be reserved to the arbitration forum. *See Ferro Corp. v. Garrison Industries*, 142 F.3d 926, 933 (6th Cir. 1998) (citing *Prima Paint Corp. v. Flood & Conklin Manufacturing Co.*, 388 U.S. 395, 403-04 (1967); *see also Medika International, Inc. v. Scanlan International, Inc.*, 830 F. Supp. 81, 87 (D. P.R. 1993) ("Having found the arbitration clause to be valid, we refer all [other] issues arising from the parties' relationship . . . to the arbitrator"). While the issue of the existence of a valid agreement to arbitrate is properly resolved by the federal court, issues related to the scope of that agreement are not. *See Moses H. Cone Hospital*, 460 U.S. at 24-25.

*WMA Sec., Inc.*, 80 F. Supp.2d at 788 (parallel citations omitted).

Accordingly, the Court finds that Safelite is not likely to succeed on the merits of its contention that it is not required to arbitrate the claims at issue here.

## B. Irreparable Harm

Safelite argues that it will suffer irreparable harm if it is forced to "binding arbitration before a ruling on the issue by the Louisiana Court of Appeals" because it will "create[] the possibility of (i) inconsistent outcomes by the AAA panel and the Louisiana Court of Appeal; (ii) forcing Safelite to arbitrate claims it never agreed to arbitrate; and (iii) expending significant time and resources reaching a decision in arbitration that will be required to be vacated when the Louisiana Court of Appeals upholds its precedent." (Doc. No. 3 at 12.) This Court disagrees.

As to Safelite's first contention, "permitting arbitration to proceed is not likely to have serious, perhaps irreparable consequences because arbitration orders are not self-executing." *Zosky v. Boyer*, 856 F.2d 554, 561 (3d. Cir. 1988). Thus, in the event of a future conflict

11

between the outcomes of the arbitration and any Louisiana appellate decision, Safelite could claim that the inconsistency justifies vacation of the final arbitration award under the Federal Arbitration Act. *See* 9 U.S.C. § 10. Therefore, Safelite has a legal remedy for the harm it fears.

Second, as the Court explained above, it is likely that Safelite agreed to arbitrate the claim at issue here. Thus, there is no harm in requiring Safelite to act in accordance with its contractual obligation. *See PolyOne Corp. v. Int'l Auto. Components Group N. A., Inc.*, No. 1:10-CV-230, 2010 U.S. Dist. LEXIS 29550 at *14-*15 (N.D. Ohio March 29, 2010) ("Thus, PolyOne cannot argue that it will be irreparably harmed by arbitrating a claim it has likely agreed to arbitrate."); *Pritchard v. Dent Wizard Int'l Corp.*, 275 F. Supp. 2d 903, 919 (S.D. Ohio 2003) ("There is nothing inherently unfair, however, about being required to participate in arbitration, especially where one has contractually agreed to resolve disputes via arbitration.").

Third, a party "does not suffer irreparable harm by being subjected to the expense of obtaining an arbitration award that ultimately proves to be unenforceable as wrongly ordered." *PolyOne Corp.*, 2010 U.S. Dist. Lexis 29550, at *14–15 (citing *Wiepking v. Prudential-Bache Secs., Inc.*, 940 F.2d 996, 999 (6th Cir. 1991)). Here, the possibility that the arbitration award would be unenforceable (or inconsistent with another decision) is speculative and presupposes that the Louisiana appellate court will hear the appeal, that it will reverse the trial court's decision regarding the application of the Louisiana UM/UIM statute and that such reversal will occur after the arbitrators have held a final hearing on the merits and found in Zurich's favor. This scenario is too speculative to constitute irreparable harm.

Moreover, the Court notes that Safelite, like the plaintiff in *PolyOne Corp.* will not "suffer some abstract injury, such as interference with customer relationships, *Certified*

12

*Restoration Dry Cleaning Network, LLC v. Tenke Corp.*, 511 F.3d 535, 550 (6th Cir. 2007), or non-actionable retribution, *Babler v. Futhey*, 669 F. Supp. 2d 873, 884 (N.D. Ohio 2009)." *PolyOne Corp.*, 2010 U.S. Dist. Lexis 29550, at *15. Accordingly, the Court finds that this factor weighs heavily in favor of denying Safelite's request for emergency injunctive relief.

## C. Harm to Others and the Public Interest

As to the public interest, this element of the preliminary injunction analysis firmly favors denying the relief sought by Safelite. Indeed, there is a strong public policy in favor of carrying out commercial arbitration when a contract contains an arbitration clause. *Performance Unlimited v. Questar Publishers*, 52 F.3d 1373 at 1384. "'Arbitration lightens courts' workloads, and it usually results in a speedier resolution of controversies.'" *Id.* (quotation omitted).

With regard to the remaining consideration before the Court; that is, the probability that granting an injunction will cause substantial harm to others. Safelite correctly explains that this case involves a commercial contract dispute and does not involve any third parties. Thus, the harm Safelite addresses is that to Zurich, which Safelite contends is non-existent. While Safelite admits that Zurich has an interest in the efficient resolution of its warranty dispute with Safelite, requiring it to wait until the Louisiana appellate court rules on the UM/UIM statute's applicability, Safelite maintains, does not unduly harm it and instead merely preserves the status quo. Even if this Court agreed with Safelite and found that this factor favors the granting of injunctive relief, it is simply insufficient in the face of the other three considerations' sound support in favor of denying the relief sought.

13

## IV. CONCLUSION

For the reasons set forth above, the Court **DENIES** Plaintiff Safelite Group, Inc.'s Motion for Temporary Restraining Order and Preliminary Injunction. (Doc. No. 3.)

8-6-2012
**DATE**

**EDMUND A. SARGUS, JR.**
**UNITED STATES DISTRICT JUDGE**