UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

SAFELITE GROUP, INC.,
    Plaintiff,

                           Case No. 2:12-cv-536
   v.                      JUDGE EDMUND A. SARGUS, JR.
                           Magistrate Judge Mark R. Abel

ZURICH AMERICAN INSURANCE
COMPANY, INC.,
    Defendant.

## OPINION AND ORDER

This matter is before the Court on Defendants Zurich American Insurance Company and

American Zurich Insurance Company's ("Zurich('s)") Motion to Compel Arbitration and

Dismiss Claims (Doc. No. 23), and Defendant Aon Risk Services Northeast, Inc.'s ("Aon('s)")

Motion to Dismiss Second Amended Complaint or, in the Alternative, for Severance and Stay

("Motion to Dismiss or Stay") (Doc. No. 45).  For the reasons that follow, the Court **GRANTS**

Zurich's Motion to Compel Arbitration and Dismiss Claims and **GRANTS IN PART AND**

**DENIES IN PART** Defendant Aon's Motion to Dismiss or Stay.

## I. BACKGROUND

Beginning in 2002, Plaintiff Safelite Group, Inc. ("Safelite") acquired a portfolio of

business insurance from Zurich.  In 2008 and 2009, Safelite acquired an insurance program from

Zurich that provided workers compensation, general liability, and commercial automobile

insurance.  Zurich and Safelite executed a Deductible and Paid Loss Retrospective Rating

Agreement and related Specifications ("Paid Loss Agreement"), which governed the insurance

program.  (Doc. No. 11, Ex. A.)

### A. The Paid Loss Agreement

As set forth in the Collateral section of the Paid Loss Agreement, the expected cost of the

insurance that Safelite acquired is approximately $22 million. (Doc. No. 11-2, Ex. A.) The Paid Loss Agreement establishes what is referred to as a loss-sensitive arrangement, by which the cost of Safelite's insurance was determined and paid over time, primarily as a function of Safelite's covered losses.

The Paid Loss Agreement "governs the structure and operation of and the duties and obligations of each party" with respect to the loss-sensitive arrangement. *Id.* Safelite's financial obligations to Zurich under the Paid Loss Agreement include the duty to fund an escrow account that is used to pay claims and claims handling expenses that arise in connection with Safelite's insurance.

With regard to the commercial automobile insurance, Safelite contends that it was and is its practice to, wherever possible, decline Uninsured/Underinsured Motorist ("UM/UIM") coverage. In some states, including Louisiana, an insured is required to complete certain forms to effectuate its decision to reject UM/UIM coverage. Safelite relied upon its broker-agent Aon to assist with certain aspects of Safelite's insurance program, including facilitating the proper completion of UM/UIM rejection forms in Louisiana and other states.

Safelite alleges in the complaint that on December 3, 2008, Zurich sent Aon the UM/UIM rejection forms for several states, including Louisiana. Aon facilitated the delivery of those forms to Safelite. Safelite completed each of the rejection forms, confirming its intent and decision to reject UM/UIM in all states it could, including Louisiana. Safelite returned the completed forms to Aon. Aon, in turn, delivered the rejection forms to Zurich on January 23, 2009.

Safelite further alleges that on January 26, 2009, Zurich wrote to Aon, advising Aon that

2

Safelite had made a clerical mistake by failing to initial a box on the Louisiana Rejection Form and requesting that Safelite complete and return an initialed Form. Aon never informed Safelite of this communication. Over the course of the next five months, Zurich sent correspondence to Aon on four more occasions, advising Aon that Safelite had made a clerical mistake on the Louisiana Rejection Form and that Safelite needed to initial the form to effectuate its rejection of UM/UIM coverage in Louisiana. Aon failed to forward any of this correspondence to Safelite or otherwise inform Safelite that it needed to initial the Louisiana Rejection Form.

**B. The Wethey Litigation**

On October 7, 2009, Bret Wethey, a Safelite employee and Louisiana resident, while acting within the course and scope of his employment with Safelite was involved in a motor vehicle accident with Louisiana resident Loyce Harper. Mr. Wethey and several of his relatives filed suit in state court in Louisiana against Mr. Harper, Harper's private passenger automobile insurer, State Farm Mutual Automobile Insurance Company, and Wethey's employer's commercial automobile insurer, Zurich. The Wetheys sought recovery from Zurich under Safelite's UM/UIM policy based on their allegation that they incurred damages as a result of the accident beyond the $25,000 in coverage available to them under the private passenger automobile policy issued to Mr. Harper by State Farm. The Wetheys asserted that they are entitled to recover from Zurich up to Safelite's policy limit of $5 million because Safelite had not rejected UM/UIM coverage in the manner required by Louisiana's UM/UIM statute.

On January 23, 2012, Safelite sought leave to file a petition to intervene in the Wethey litigation for the purpose of asserting claims against Zurich. (Safelite's Petition of Intervention, Doc. No. 12-4, Ex. C.) Zurich opposed this intervention. On April 30, 2012, the Louisiana trial

3

court granted leave for Safelite to intervene for the purpose of enforcing any statutory contribution rights it may have against Zurich. (Judgment, Doc. No. 12-6, Ex. E.) The trial court ultimately determined that Mr. Wethey could recover under the Louisiana UM/UIM statute. Safelite claims that the trial court's finding is erroneous.

On May 22, 2012, less than two weeks before trial in the Wethey litigation was scheduled to begin, Zurich reached a settlement with the Wetheys. In the settlement, Zurich agreed to pay a total amount of $2,225,000 in addition to the $300,000 that Zurich had previously tendered to the Wetheys in accordance with Louisiana law. Safelite has refused to pay any portion of this claim payment or the expenses associated with this claim, and instead, filed a Notice of Intention to Seek Supervisory Writs seeking discretionary review of the state trial court's determination that the Wetheys could recover from Zurich under the Louisiana UM/UIM statute. (Notice, Doc. No. 12-13, Ex. L.) On April 5, 2013, the Louisiana appellate court denied Safelite's request to review the trial court's decision. (Decision, Docs. No. 51-1, 52-1.)

## C. Arbitration

On May 24, 2012, Zurich filed a Demand for Arbitration with the American Arbitration Association ("AAA"), based upon an arbitration provision in the Paid Loss Agreement. The Demand seeks arbitration of any and all claims between Zurich and Safelite arising out of the interpretation, performance or breach of the Paid Loss Agreement, including but not limited to Safelite's failure to fund claim payments, plus related expenses and assessments, arising from the claims asserted in the Wethey litigation. (Arbitration Demand, Doc. No. 12-10, Ex. I.)

The Paid Loss Agreement's arbitration provision provides in relevant part:

Any dispute arising out of the Interpretation (*sic*), performance or alleged breach of

4

> this Agreement shall be settled by binding arbitration administered by the American Arbitration Association (AAA) under its Commercial Arbitration Rules . . . .

*Id.* at 9. One of the AAA's Commercial Arbitration Rules is Rule 7, which states that the "arbitrator shall have the power to rule on his or her own jurisdiction, including any objections with respect to the existence, scope or validity of the arbitration agreement." (AAA Commercial Arbitration Rule 7 available at http://www.adr.org, Doc. No. 12-3, Ex. B.)

On June 11, 2012, Safelite and Zurich participated in an initial conference with the AAA concerning Zurich's Arbitration Demand. Safelite informed the AAA that it objects to proceeding with arbitration because it believes the AAA lacks jurisdiction over the claims asserted by Zurich. The AAA informed the parties that it would proceed with the arbitration unless enjoined by a court order.

On June 20, 2012, Zurich filed a motion in the Wethey litigation seeking to compel Safelite to arbitrate its disputes with Zurich. ((Mot. to Compel Arbitration and Dismiss, Doc. No. 23, Ex. K.) The court granted that motion. (Order Granting Mot. to Stay, Doc. No. 23, Ex. L.)

**D. Current Litigation**

On June 15, 2012, Safelite filed this action alleging three claims against Zurich and three claims against Aon. The claims filed against Zurich are for injunctive relief, declaratory judgment, and breach of implied duties. In the amended complaint, Safelite withdrew its injunctive relief claim. The claims filed against Aon are breach of contract, breach of fiduciary duty, and indemnification/contribution.

With the complaint, Safelite also filed a Motion for a Temporary Restraining Order and

Preliminary Injunction, in which it sought a stay of the arbitration that was pending before the

AAA. On August 6, 2012, this Court denied Safelite's motion, finding that, *inter alia*, it was

"not likely to succeed on the merits of its contention that it is not required to arbitrate the claims

at issue here." (Op. and Order Denying Inj. Relief at 11, Doc. No. 21.)  Zurich and Safelite

disagree as to what the phrase "the claims at issue here" entails.  Zurich contends that the phrase

constitutes all of the claims Safelite brought against Zurich in this action, and asks this Court to

grant its request to compel arbitration of those claims.  Safelite, however, takes the position that

the phrase does not include its breach of implied duties claim.

Additionally, Aon requests that this Court dismiss the claims brought against it by

Safelite because the complaint fails to state claims upon which relief can be granted.

Alternatively, Aon moves to have this action stayed, pending the resolution of the claims filed by

Safelite against Zurich.  Safelite opposes both of these requests.

## II. ZURICH'S MOTION

Since this Court's decision denying Safelite's motion for injunctive relief, Safelite and

Zurich disagree only as to whether Safelite's breach of implied duties claim is arbitrable.  Zurich

moves for this Court to compel arbitration of that claim, asserting:

> This Court recently found that, "Safelite is not likely to succeed on the merits of its
> contention that it is not required to arbitrate the claims at issue here." (Order of Aug.
> 6, 2012, Dkt No. 21 at 11.)  It is time to take this finding one step further and enter
> an order under Section 4 of the Federal Arbitration Act (FAA) compelling the parties
> to arbitrate.[1]

---

[1]Zurich also makes the alternative argument that the FAA requires the arbitrator to decide
whether Safelite's breach of implied duties claim is arbitrable because the parties incorporated
the AAA's Commercial Arbitration Rules into the Paid Loss Agreement.  The parties, however,
disagree as to whether this incorporation requires the arbitrator to determine whether Safelite's
breach of implied duties claim should be arbitrated, or whether that determination is for this

6

(Mot. to Compel Arbitration and Dismiss at 2, Doc. No. 23.)

In its decision denying Safelite's request for injunctive relief, the Court found that Safelite and Zurich entered into a valid agreement to arbitrate "any dispute arising out of the interpretation, performance or alleged breach" of the Paid Loss Agreement. (Op. and Order Denying Inj. Relief at 10, Doc. No. 21.) This provision constitutes a broad, general arbitration provision applicable to the entire Paid Loss Agreement.

The Sixth Circuit "has drawn a clear line between the extensive applicability of general arbitration provisions and the more narrow applicability of arbitration clauses tied to specific disputes. When faced with a broad arbitration clause, such as one covering *any* dispute arising out of an agreement, a court should follow the presumption of arbitration and resolve doubts in favor of arbitration." *Simon v. Pfizer Inc.*, 398 F.3d 765, 775 (6th Cir. 2005) (emphasis in original) (citing *Masco Corp. v. Zurich Am. Ins. Co.*, 382 F.3d 624, 627 (6th Cir.2004)). "Indeed, in such a case, 'only an express provision excluding a specific dispute, or the most forceful evidence of a purpose to exclude the claim from arbitration, will remove the dispute from consideration by the arbitrators.'" *Id.* (citing *Masco Corp.*, 382 F.3d at 627) (internal quotations and citation omitted). Yet, "when an arbitration clause by its terms extends only to a specific type of dispute, then a court cannot require arbitration on claims that are not included." *Id.* (finding that the arbitration provisions did not relate to any dispute arising from the

Court. Both Zurich and Safelite admit that the Sixth Circuit has intentionally left open the issue of "[w]hether the incorporation of AAA rules . . . constitutes a sufficiently clear delegation of [the] power to the arbitrator" to decide arbitrability. *Turi v. Main Street Adoption Serv.*, 633 F.3d 496, 506 (6th Cir. 2011). Because Zurich's other grounds offered to support its Motion to Compel Arbitration and Dismiss are well taken, this Court finds it unnecessary to address this unsettled area of law, and declines to do so here.

7

agreement, but were "admittedly narrower and are contained specifically in the sections of the

document concerning Constructive Termination and Actual Termination"); *see also Turi v. Main*

*St. Adoption Servs., LLP*, 633 F.3d 496, 509 (6th Cir. 2011) ("the parties' arbitration clause

appears to be quite deliberately limited to disputes 'regarding fees'": "In agreeing to arbitration,

we both acknowledge that, in the event of a dispute over fees charged by us, each party is giving

up the right to have the dispute decided in a court of law before a judge or jury and instead we are

accepting the use of arbitration for resolution of this matter.").

     In the case *sub judice*, there is no express provision excluding breach of implied duties

claims, no forceful evidence of a purpose to exclude this type of claim from the arbitration

provision entered into between Safelite and Zurich, and no language indicating that the

arbitration provision extends only to a specific type of dispute.  Therefore, this Court will "follow

the presumption of arbitration and resolve doubts in favor of arbitration."  *Simon*, 398 F.3d at

775.  As to that presumption, this Court explained in its decision denying Safelite's motion for

injunctive relief:

> "The federal policy favoring enforcement of valid agreements to arbitrate
> disputes is now well-established.  *See Moses H. Cone Hospital v. Mercury
> Construction Corp.*, 460 U.S. 1, 24 (1983).  Accordingly, once a court has
> determined that a valid agreement to arbitrate a dispute exists, all other issues
> concerning the dispute must be reserved to the arbitration forum.  *See Ferro Corp.
> v. Garrison Industries*, 142 F.3d 926, 933 (6th Cir. 1998) (citing *Prima Paint Corp.
> v. Flood & Conklin Manufacturing Co.*, 388 U.S. 395, 403-04 (1967); *see also
> Medika International, Inc. v. Scanlan International, Inc.*, 830 F. Supp. 81, 87 (D.
> P.R. 1993) ('Having found the arbitration clause to be valid, we refer all [other]
> issues arising from the parties' relationship . . . to the arbitrator')."

(Op. and Order Denying Inj. Relief, at 11, Doc. No. 21) (quoting *WMA Secs., Inc. v. Ruppert*, 80

F. Supp. 2d 786, 788 (S.D. Ohio 1999)).

8

Indeed, "[a]n order to arbitrate should not be denied 'unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute.'" *Turi*, 633 F.3d at 509 (quoting *AT&T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 650 (1986)). A motion to compel arbitration should be granted if any plausible interpretation of an arbitration agreement makes a dispute arbitrable. *See JPD, Inc. v. Chronimed Holdings, Inc.*, 539 F.3d 388, 391 (6th Cir. 2008) ("While we agree that this interpretation is not the only plausible one, the law requires us to resolve ambiguity "concerning the scope of arbitrable issues . . . in favor of arbitration.'"); *see also Highlands Wellmont Health Network, Inc. v. John Deere Health Plan, Inc.*, 350 F.3d 568, 576-77 (6th Cir. 2003) ("There is a general presumption of arbitrability, and any doubts are to be resolved in favor of arbitration 'unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute.'") (quoting *AT & T Techs., Inc. v. Commc'n Workers of Am.*, 475 U.S. 643, 650 (1986)).

This Court cannot say with positive assurance that the arbitration clause at issue here is not susceptible of an interpretation that covers Safelite's breach of implied duties claim. Zurich offers two plausible interpretations of the clause which would make this dispute arbitrable.

First, Zurich contends that the arbitration clause covers Safelite's breach of implied duties claim because that claim shares the same factual basis as the arbitrable claims. Specifically, Zurich maintains:

> The factual basis for Safelite's implied duty claim is the same as that for its declaratory judgment claim against Zurich, Zurich's breach of contract claim against Safelite, and Safelite's statutory contribution claim against Zurich, all of which have been conceded to be arbitrable or ordered to arbitration. All of these claims are based on the circumstances surrounding Safelite's failure to effectively reject UM/UIM

9

coverage, the Wethey claim, and Zurich's recovery of losses arising from the Wethey litigation. Put another way, but for the Wethey claim, Safelite would not have any implied duty claim. Safelite summarized its implied duty claim as follows:

> Safelite alleges that Zurich breached these duties by failing to notify Safelite about the need for its initials on the rejection form, improperly handling the Wethey Action, including advocating against Safelite in the Wethey Action, and improperly making payments and settling the Wetheys' claim without notice to, or the consent of, Safelite.

(Opp. at 18-19, citing Am. Compl. ¶¶ 19, 30, 62.)  Safelite's description of its claim reveals that Safelite believes Zurich violated an implied duty not to make an *ex gratia* payment to the Wetheys. This is the functional equivalent of Safelite's contention in the arbitration that the Wethey claim is not a Paid Loss under the Paid Loss Agreement because there was no coverage for that claim. (*See* Dkt No. 30 at 10-11.) Safelite wishes to litigate the mirror image of its arbitration defenses as affirmative claims in this Court.

(Zurich's Reply in Support of its Mot. to Compel Arbitration and Dismiss at 10) (relying on

*Simon*, 398 F.3d at 776 ("[W]hen an otherwise arbitrable claim has simply been renamed or

recast[,] it will share the same factual basis as the arbitrable claim."))

Second, Zurich takes the plausible position that Safelite's breach of implied duties claim

falls within the arbitration clause because it cannot be maintained without reference to the Paid

Loss Agreement or the relationship at issue. *See NCR Corp. v. Korala Assocs. Ltd.*, 512 F.3d

807, 813 (6th Cir. 2007); *Nestle Waters N. Am., Inc. v. Bollman*, 505 F.3d 498, 504 (6th Cir.

2007); *Fazio v. Lehman Brothers, Inc.*, 340 F.3d 386, 395 (6th Cir. 2003). It is this standard that

Safelite contends governs the assessment of the scope of the arbitration agreement. (Safelite's

Mem. in Opp. to Zurich's Mot. to Compel Arbitration and Dismiss at 9) (relying on *NCR Corp.*,

*supra*, Safelite contends that the proper standard is whether "an action could be maintained

without reference to the contract or relationship at issue. If it could, it is likely outside the scope

of the arbitration agreement."). Specifically, Zurich offers the following:

> This case involves many aspects of the insurer-insured relationship, which is the sole relationship shared by Zurich and Safelite. The Paid Loss Agreement is the core of this relationship because it defines the financial relationship between Zurich and Safelite, including the flow of funds, the collateral requirements, and the attachment points for the risk transfer that is the essence of insurance. (See Paid Loss Agreement at Ex. A to Dkt No. 23 §§ A – H.) Safelite has emphasized the importance of the insurer-insured relationship to the arbitration:
>
>> Safelite has advanced the position in the Wethey Action that UM/UIM benefits are not available to the Wetheys because the Louisiana UM/UIM statute is facially inapplicable and there is no statutory basis to impose UM/UIM coverage, and Zurich was therefore under no legal obligation to make any payments to the Wetheys. (Am. Compl. at ¶ 34.) Similarly, Safelite has taken the position in the Arbitration that Zurich's payments to the Wetheys were not payments made pursuant to a claim under the Policy and do not qualify as a "Paid Loss" for which Safelite is required to reimburse Zurich.
>
> (Dkt No. 30 at 10-11.) This description of the arbitration reveals that the insurer-insured relationship is the heart of the arbitration.

(Zurich's Reply in Support of its Mot. to Compel Arbitration and Dismiss at 8.) Zurich

continues:

> Safelite's claim to avoid some or all of the Paid Losses arising from the Wethey litigation also requires reference to the Paid Loss Agreement. . . . Safelite's claim requires reference to the definitions and financial arrangements established in the Paid Loss Agreement to explain why it should not be required to pay all of the Paid Losses from the Wethey litigation. . . . Safelite asserts the manner in which Zurich handled the Wethey litigation prevents some or all of the losses from the Wethey claim from being considered "Paid Losses" under the Paid Loss Agreement.

*Id.* at 9.

Consequently, Zurich has offered two plausible interpretataions of the arbitration clause

that would require Safelite's breach of implied duties claim to be arbitrated. Accordingly, under

the law of this circuit, Safelite's claims in this action are properly dismissed and compelled to

11

arbitration.

### III. AON'S MOTION

Aon requests that this Court dismiss the claims against it or, alternatively, bifurcate those claims and stay them pending the outcome of the arbitration between Safelite and Zurich.

#### A. Request to Dismiss for Failure to State a Claim

##### 1. Standard

In evaluating a complaint to determine whether it states a claim upon which relief can be granted, the Court must construe it in favor of the plaintiff, accept the factual allegations contained in it as true, and determine whether the factual allegations present any plausible claim. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555–5570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (clarifying the plausibility standard articulated in *Twombly*). The factual allegations of a pleading "must be enough to raise a right to relief above the speculative level . . . ." *Twombly*, 550 U.S. at 555 (citation omitted).

##### 2. Analysis

Aon argues that Safelite's second amended complaint "does not allege even the most basic facts about the damages Safelite has directly suffered, other than speculation about the lawsuit in Louisiana and the arbitration with Zurich." (Aon's Mot. to Dismiss or Stay at 1.) Aon continues that, if in the future Safelite is successful in either action, Aon will never owe anything. Further, Aon posits that it was Safelite's voluntary action in intervening in the state court action that caused any attorney fees and costs to be incurred. Therefore, Aon concludes

12

that Safelite has failed to sufficiently allege damages against Aon, requiring dismissal of all of the claims filed against it. Aon's arguments are not well taken.

Review of the amended complaint shows that Safelite has sufficiently alleged damages. Safelite avers that its damages consist of attorney fees and costs it incurred defending the Wethey Action and the arbitration. Safelite alleges that if Aon fulfilled its duties, then (1) Safelite's rejection of UM/UIM coverage in Louisiana would have been effective; (2) the Wetheys would have had no basis to file a claim for UM/UIM benefits, (3) Zurich would not have made payments to the Wetheys on their purported UM/UIM claim, and (4) Safelite would not have incurred any fees or expenses in intervening to protect its rights in the Wethey Action or the arbitration.

As Safelite correctly contends, Ohio law allows a plaintiff to recover, as compensatory damages, attorney fees and costs incurred in third party actions that were caused by a defendant's breach. According to the Tenth District Court of Appeals, "courts have allowed the recovery of attorney fees as compensatory damages where a party's wrongful breach has led to legal fees being incurred in a suit with a third party." *Tejada-Hercules v. State Auto. Ins. Co.*, No. 08AP-150, 2008 Ohio App. LEXIS 4269, 2008 Ohio 5066, at ¶ 20 (Ohio Ct. App. 10th Dist. 2008). *See also Shanker v. Columbus Warehouse Ltd. P'ship*, No. 96APE09-1269, 2000 Ohio App. LEXIS 2391, at *13 (Ohio Ct. App. 10th Dist. June 6, 2000) (same); *S&D Mech. Contr., Inc. v. Enting Water Cond. Sys., Inc.*, 71 Ohio App.3d 228, 241 (2d Dist. 1991) (plaintiff could recover legal fees it incurred in third party litigation that was a result of responding to problems caused by defendant's breach).

Generally, each party to an action is responsible for its own attorney fees

13

incurred as a result of the litigation. *Cincinnati Ins. Co. v. Diebold* (1989), 64 Ohio App.3d 273, 581 N.E.2d 566. However, this general rule, known as the "American Rule," does not operate to preclude such recovery in all circumstances. Attorney fees may be recovered:

> ". . . [W]here the wrongful act of the defendant has involved the plaintiff in litigation with others or placed him in such relation with others as makes it necessary to incur expense to protect his interest, such costs and expenses, including attorneys' fees, should be treated as the legal consequences of the original wrongful act and may be recovered as damages." *V.N. Holderman & Sons. Co. v. Jackson* (Ct.Cl.1975), 73 O.O.2d 148, 150.

*S&D Mech. Contr.*, 71 Ohio App.3d at 241.

Accordingly, the Court finds that Safelite has pleaded damages sufficient to state a claim upon which relief can be granted.

## B.  Request to Sever and Stay

### 1.  Standard

Aon moves under Rule 42(b) of the Federal Rules of Civil Procedure to sever and stay all claims asserted against it.

> A district court may bifurcate a trial "in furtherance of convenience or to avoid prejudice, or when separate trials will be conducive to expedition and economy." Rule 42(b), Fed. R. Civ. P.  Only one of these criteria need be met to justify bifurcation. *MCI Communications Corp. v. American Telephone & Telegraph Co.*, 708 F.2d 1081, 1177 (7th Cir. 1983).  The language of Rule 42(b) places the decision to bifurcate within the discretion of the district court. *Davis v. Freels*, 583 F.2d 337, 343 (7th Cir. 1978).  The rule clearly suggests that a court may bifurcate a trial on its own motion.   A decision ordering bifurcation is dependent on the facts and circumstances of each case. *Idzojtic v. Pennsylvania Rr. Co.*, 456 F.2d 1228 (3d Cir. 1972).

*Saxion v. Titan-C-Manufacturing*, 86 F.3d 553, 556 (6th Cir. 1996).

### 2.  Analysis

Safelite argues that this case does not present the "exceptional case[]" in which a

14

severance and stay is appropriate.  (Safelite's Mem. in Opp. to Aon's Mot. to Dismiss or Stay, Doc. No. 46 at 14) (quoting *Woods v. State Farm Fire & Cas. Co.*, No. 2:09-cv-482, 2010 U.S. Dist. LEXIS 35230, at *2 (S.D. Ohio 2010)).  Safelite asserts that bifurcation should be ordered only in exceptional circumstances because it "is the exception to the general rule that disputes should be resolved in a single proceeding. . . . [and] [b]ecause '[t]he piecemeal trial of separate issues in a single lawsuit or the repetitive trial of the same issue in severed claims is not to be the usual course[.]'"  *Id.* (quoting *Woods*, *supra*,*2–3) (Safelite's emphasis removed).

In the instant action, however, the harm these principles are meant to remedy is not present. *See e.g. Momentive Spec. Chem., Inc. v. Chartis Spec. Ins. Co.*, No. 2:11-cv-00583, 2012 U.S. Dist. LEXIS 32211, at *20–22 (S.D. Ohio March 12, 2012) (denying motion to sever and stay because "the same witnesses will likely be called upon to testify as to Aon's actions in both the coverage case and the breach of contract case.  Judicial economy and convenience are not served by having the court hold two separate trials where many of the same issues and witnesses will be presented.").  There will be no piecemeal trial of separate issues or the repetitive trial of the same issue.  The claims against Zurich will not be considered by this Court.

Yet, the arbitration between Zurich and Safelite will certainly inform the claims Safelite brings against Aon.  Waiting until the arbitration is complete will be conducive to the expedition and economy of this Court's consideration of Safelite's claims against Aon.  Indeed, the indemnification/contribution claim could not possibly be determined without the determination of whether Zurich owes any monetary payment to Safelite and the amount owed, which will be determined in the arbitration  (Second Am. Compl. ¶ 65, Doc. No. 44) ("If and to the extent Safelite is liable to Zurich for any payment of amounts arising from or related to the Wethey

Action, Aon is obligated to indemnify and hold harmless Safelite for any such liability.")
Moreover, any other damages Safelite may obtain from Aon are dependent upon the costs
Safelite continues to incur in the arbitration. *Id.* ("Aon is also obligated to indemnify and hold
harmless Safelite for any attorney fees and costs it has incurred, or will incur, in defending
against actions caused by Aon's breach of its duties to Safelite, including the Wethey Action and
the Arbitration filed by Zurich.").

Thus, the Court concludes that Aon has met its burden under Rule 42(b). Accordingly,
the Court shall stay this action pending resolution of the arbitration currently proceeding between
Safelite and Zurich.

## IV. CONCLUSION

Based on the foregoing, the Court **GRANTS** Zurich's Motion to Compel Arbitration and
Dismiss (Doc. No. 23), and **GRANTS IN PART AND DENIES IN PART** Aon's Motion to
Dismiss or Stay (Doc. No. 45); **DENYING** the motion as it relates to Aon's request to dismiss
this action for failure to state a claim and **GRANTING** the motion as it relates to Aon's request
for a severance and stay. The Clerk is **DIRECTED** to **REMOVE** Defendants Zurich American
Insurance Company and American Zurich Insurance Company as defendants in this action, to
**STAY** the remainder of the case, and to **ADMINISTRATIVELY CLOSE** it. Safelite is
**DIRECTED** to contact this Court upon the conclusion of the arbitration, at which time the Court
will restore the case to its active docket.

IT IS SO ORDERED.

7-24-2013
DATE

EDMUND A. SARGUS, JR.
UNITED STATES DISTRICT JUDGE

16